Ladies and gentlemen, please rise. This court is now in session. Please be seated. Thank you.  321-0610 Marty Rave, Tanner Rave, and Cotter Rave, found by Elizabeth Megley v. David Faulkner, affidavit by Jeffrey Corso. Ms. Megley, you may proceed.  May it please the Court, Counsel. This is a case related to a breach of contract claim that was brought by my clients, and the appellants in this case affirmed that the trial court improperly granted the defendant's motion for summary judgment because there remained issues of fact for the trier of fact. In this particular case, there are certain undisputed facts, without question. It is undisputed that the defendant contacted my client in February of 2018 inquiring about a lot that he saw that he believed was for sale. It's undisputed that my client and the defendant had a discussion, at which point an email was sent to the defendant which included a plat which said, Lot 4, 1830 Kern Drive. It is undisputed that that plat did also show two other lots. It is undisputed that the parties then entered into a contract on March 2nd of 2018. That contract identified the property by a legal description that was not accurate. It did, however, also describe the property by a PIN number, a parcel identification number that was accurate. The defendant testified that he was aware that the legal description was inaccurate on the contract.  On March 7th... So is it undisputed the PIN number is the accurate PIN number? It is undisputed that the PIN number describes the property, Lot 4, 1830 Kern Drive, which is also the legal description that was provided by the title commitment. There's been no question with respect to that PIN number. But it was on the contract for... Correct. That wrong property description. The legal description and the PIN number are inconsistent. Okay. Yes. However, in this case, the defendant testified he knew that they were inconsistent. It also had language that said that the legal description and PINs would be provided by the title company. The reason this exists by custom and practice is because the legal description can be inaccurate at the time the contract is drafted. It is anticipated that the title commitment will follow. In this particular case, after receiving the title commitment, the defendant terminated the contract. The issue in this case is really whether the court can consider extrinsic evidence to determine the intent of the parties or to clarify an ambiguity that exists in the contract. Typically, Illinois follows the four corners rule. However, when there's an ambiguity in the contract, it is possible to utilize extrinsic evidence to resolve that ambiguity. Here, there are... I just have a question just off the wall here. Certainly. Okay, so clearly the contract had an inaccurate property description, correct? That is correct. Okay. So when the deed is drafted and issued, which property description do you use? It would be the property description that is consistent with the PIN number and the title commitment, which was to follow. Okay. In this particular case, because the defendant was aware of the inaccuracy of the title commitment and further didn't advise plaintiffs that he was aware of this inaccuracy and went ahead and signed the contract, it is appellant's position that he is then stopped from now claiming that that inaccurate legal description prevented the contract from being enforceable. That is consistent with what the court has held in similar cases in which a party agreed to insert legal description to follow. In that particular case, the court said when the parties agreed the legal description would follow, they were then... the party who was claiming that the contract was not valid was then stopped from making that claim because that party had agreed that the legal description would come at a later point. In those cases, was there an accurate legal description in the contract itself? In at least two cases, there was no legal description. However, the courts have also looked at inaccurate legal descriptions and utilized extrinsic evidence to determine what was intended. In many of those cases, real estate law going back a number of years, we look at some very old cases. The Geier case, which was determined in 1898, determined that extrinsic evidence could be utilized to resolve an ambiguity in the contract. Now, in that case, technology was somewhat different as was how we described real estate. They referred to utilizing dimensions, characteristics, or monuments as being a way to go out into the country and say, yes, I can now describe this particular piece of property even though there was an inaccuracy in the contract. Well, times have changed, and we now use other means to determine how property is identified. One of those means is a parcel identification number. In this particular case, a surveyor could have taken the parcel identification number and gone directly to that piece of property. The appellee discounts the importance of a PIN number. A parcel identification number is based upon an accurate description of the underlying property, isn't it? That is correct. And is it a PIN number really for assessment purposes, taxation purposes? Well, while it was initially created for that purpose as a way to track properties, recorders' offices now actually, when they get a deed, they utilize both the legal description and the PIN as a way of tracking that property. So the actual PIN has become now a way that we actually describe a piece of property. It describes the characteristics of that property. It describes the dimensions of that property, and it describes the monuments on that property. There is no better way of identifying a piece of property than through its PIN number. In fact, if today you went and looked in Tazewell County at that PIN number, it would bring up Lot 4 in Timber Ridge Estate Subdivision, 1830 Kern Drive. The property that was discussed between the parties in this case. Now, the defendant would assert that there was a lack of intent by his client or a question of intent because he may have believed that Lots 5 and 19 could be included. However, the testimony is not as the appellee would like this court to believe. It was not certain. The defendant did not say with certainty it was Lots 4, 5, and 19. Rather, on page 47 of his deposition at lines 18 through 23, the defendant said it was Lot 4 and maybe parts of Lot 5 and 19. But he acknowledges that he wasn't certain about what else might have been included. He also acknowledged that the only lot number that was ever referred to in communications between the parties was Lot 4. He acknowledged the only address that was ever used by the parties was 1830 Kern Drive, though not included within the face of the contract. Ms. McAvoy, you did not mention the integration clause in the contract. Certainly. Doesn't that have some impact to you? So the integration clause certainly has an impact within the four corners of the contract. It is clear what the intention of the parties was. In that particular case, we can't look at extrinsic evidence or prior conduct to determine what the intent of the parties is because it's clear on the face of the contract. However, in cases where there is uncertainty, the integration clause does not prevent the court from evaluating extrinsic evidence to determine what was intended to resolve the ambiguity. It would, however, prevent the parties from utilizing extrinsic evidence in the case where there is no ambiguity within the contract itself. In this particular case, the defendant would not only have you believe that there is significant disagreement as to the lots, he also has misrepresented the testimony of my client, who indicated that he would agree he could not convey the property that was legally described in the description. However, he could always have conveyed the PIN number that was reflected in the contract. In this particular case, the trial court is asked to determine on a motion for summary judgment whether there is any issue of material fact. It is not asked to determine the credibility or weigh the evidence. It is not asked to try issues of fact, but rather to determine whether they exist. In this particular case, the ambiguity that exists within the contract is the result of a mistake. A mistake that is acknowledged by the defendant, a mistake that is acknowledged by the plaintiffs. In that case, the mistake should be resolved by extrinsic evidence and looking at the intent of the parties. Now, the defendant would have you consider the intent of the parties while also arguing that extrinsic evidence is not appropriate. The reality is that it is unclear what a trial court would ultimately determine, but the time to make decisions regarding the credibility of witnesses or the weighing of evidence is to occur before the trier of fact, not at the time a motion for summary judgment is presented to the trial court. Parole evidence, including the PIN number, including the title commitment, all of which made the contract clear. There was never an objection to the title commitment. Never a claim that the property that was described in the title commitment was not accurate. Never a question as to the PIN number. The only issue that has been raised here is the legal description that was on the face of the contract. In this case, the property was made certain by the PIN and the title commitment. It is the appellant's position that the court's rulings in Guyer v. Warren and Stephen v. Wright are applicable here. That in this case, extrinsic evidence, the PIN number, which could lead to the property, the title commitment, which was later produced and the parties agreed would be utilized in order to make certain the legal description, all allowed it to be clear what property was being sold. In the Schmalzer case, a legal description was omitted, but a legal description was to be provided later. As I've indicated previously to the court, in that case, the appellate court determined that there was a question or an issue of waiver or estoppel by the party then claiming that the contract was not complete. They asserted, as is the case here, that I cannot agree to have a term inserted later and then complain because it was. I would argue in this case it's even more the fact that there should be an estoppel of defendant's position. He not only agreed to insertion of the legal description at a later point, but also acknowledged that the legal description that was included in the contract was not accurate. He knew it was not accurate and yet still signed the contract. The case law is replete with courts enforcing real estate contracts that could be made certain by title abstract or other means of specifically identifying the property. In this case, the court should remand this case to the trial court with directions that there is a question of material fact that remains. There is a question that requires the weighing of evidence, which considers extrinsic evidence, such as the PIN number, title commitment, and perhaps other expert witness testimony to determine what was intended by the contract and to evaluate the credibility of the witnesses with respect to mutual mistake. What would you say, very simply, is the material fact that needs to be resolved? The material fact that needs to be resolved is the legal description is the identifying the ambiguity in the contract. In this case, the trial court found, and in fact, as part of the motion to reconsider, the trial court's finding was it did not consider any extrinsic evidence, did not consider the testimony of any parties, and rather came to the determination that the contract could not have been formed because the legal description was inaccurate. In this case, what the trial court forgot to or didn't consider is that the PIN number was existing as well, and that PIN number also described a piece of property, and it described the piece of property that the parties had been discussing. Lot 4, 1830 Kern Drive. And so the trial court should utilize that information and the testimony of parties to determine whether the contract, in fact, there was a contract formation. We would assert a contract was formed. We would assert that the evidence that exists would suggest that the parties all intended for it to be Lot 4 that was conveyed by this particular contract. Now, the defendant's going to disagree with me on that, right? The defendant's going to say that the defendant did not intend for it to just be Lot 4, that the defendant believed it could include parts of other properties. However, that's an issue of fact. Obviously, both of us are going to take the position that our clients completely are justified in the positions that they're taking here. However, the reality is that this is a decision for the trier of fact, and this should be remanded to the trial court for that decision. Motion for summary judgment was not appropriately granted in this case. Thank you. Questions? We don't have time to reply. Thank you. Counsel? Good morning. Good morning. May it please the Court. Counsel. Two lenses. The Supreme Court's given us two lenses through, I think, for which to look at this case. When you put them on, you get the same result. It's not to say the Supreme Court said two different things. They said the same thing about patent ambiguity and how parole evidence can't fix it. Would you identify yourself for the record? I'm sorry. Jeff Corso for the employee. I thought I heard that. Thank you. It helps. I don't like myself today. Well, go ahead. All right. So the Supreme Court, like I said, has given us two lenses. They're not saying different things. They're just using different language, and the language points to the same result. So I'm going to talk about the first lens, the Kopersch lens, and then the second lens, the Schmalzer lens. I'm going to tell you the language and then tell you how I think you can apply this law to a very simple set of facts. And then I'm going to tell you why. You are Jeffrey Corso. Most days, yes, I am. Okay, that's what I meant by identifying yourself. I thought I just did. Jeff Corso for the employee. Okay. I'm sorry. I'm sorry. It must be that rapid speech. And I'm from Texas. I thought I was slow. You're not. I will go slower. The Kopersch lens. There the court said these words. Parole evidence cannot clean up a patent ambiguity. So what is the patent ambiguity? The patent ambiguity is this. It's simple. When you look at that contract, it has a legal description. The legal description is not for 1830 Kern. It is for 204 Sterling, 1.6 miles away. So the legal description, everyone agrees, is not for the property that the plaintiff's intended to sell. Underneath that, it has a PIN number, a 12-digit PIN number. That PIN number is for 1830, today, for 1830 Kern. The difference between that PIN number and the PIN number for Sterling is the ninth digit. A five, two versus an eight. That's it. Underneath that is language that says additional PINs and descriptions will be supplied. Why? Because the title commitment, contrary to what counsel said, did not exist at the time of the contract.  In fact, after we terminated the contract. After attorney Skinner terminated that contract. When Dr. Hauslein walked this bare property, he looked at the dimensions. He asked Tanner Ray, the plaintiff, what am I getting? Tanner Ray sent this email, which is in the record page 194 through 196. Sent this email and said, here is the plat map of the lot. Here's the plat map. And the plat map doesn't say just Lot 4. It says legal description, Lot 4, and part of Lots 5 and 19 in Timber Creek. Doesn't say just Lot 4. Dr. Hauslein believed he was getting Lot 4, parts of 5, and part of 19. Which, when you go out there, you don't go out to the land and say, oh, that's clearly Lot 4, and that's clearly Lot 5, and that's clearly Lot 19. This is what he thought he was getting. He did know it was 1830 Kern. But he believed this is what he was getting. And additional pins and legal descriptions would follow. So, on its face, this contract is patently ambiguous. Because you're selling Sterling, and you're selling Kern's pin number, and other pin numbers to come. Which is it? And so when you look at it, it's patently ambiguous. Plural evidence can't solve it. Did the doctor receive that plat before or after he signed it? February 22, 2018. So before. All right. Now let's take a look at the Schmalzer lens. And I like this lens for one reason. It explains Geyer and Stevens. Because Geyer and Stevens are properly decided. And those are the cases that the plaintiffs rely on. Here's the language in the Schmalzer case from 1950. If a contract for the sale of land does not definitely point out the land to be conveyed, or furnish the means of identifying the land with certainty, the contract cannot be enforced. So notice the court lays out two conditions for enforcing a land sale contract. One, it must definitely and without contradiction state the land to be conveyed. That clearly didn't happen here. Because there is a contradiction in the contract. Again, you've got I'm selling Sterling by legal description. I'm selling 1830 Kern by lot number. But I'm also providing you two other lot numbers. And it's important to note that 1830 Kern and Lot 4 are never understood by the parties to be the same thing. In fact, Tanner Rave, when he was asked, testified, how does one know that this PIN number that's in the contract only refers to Lot 4 and not Lot 4 plus 5 and part of 19? And he said, I don't know. Even the plaintiff doesn't know. He didn't know what PIN number it was. So he couldn't have had... The PIN number is associated with Lot 4. Today it is. Why do you say today it is? Because we didn't have a trial. We didn't do a full-blown discovery. I would prove later on that Lot 4 had a different... That PIN number referred... There was a subsequent division of land. That had occurred, according to the recording. I would have had to bring the recording. But that's not in the record, so I did not do it. The second prong of that Schmalzer test is, or furnishing means of identifying the land with certainty. The reason that's important is because in Guyer, the sale of the land was described as our farm in LeClaire's Reserve consisting of 83.31 acres, which the Supreme Court in the 1800s said could be enforced because even though it didn't definitely describe the real estate, the words our farm furnished a means for identifying the land with certainty. Had the Raves said our property in Timber Creek Estates, that would be a different case. That's not what they said here. What they said here is, we're selling you sterling, we're selling you this PIN number, and we're selling you additional PIN numbers to be forthcoming. We'll let you know when that is. So here, the contract does not definitely, and without contradiction, identify the land to be sold. There is, again, a legal description of the sterling property, followed by the PIN for the current property, followed by a promise of not only the current property, but that the current property will consist of other PINs to be identified. Dr. Hauslein never acknowledged that he was receiving only Lot 4. He said, I believe I was receiving exactly what Tanner Rave told me I was getting. I don't know what a PIN number is. I don't know what the PIN number assigned to the land that they own is. I assumed that I was getting 4, 5, and 19. Now, if there were a fact issue, we would resolve this case on a meeting of minds issue. The reason I didn't bring summary judgment on a meeting of minds is because that is a fact issue. That's why I brought summary judgment on the mere fact that this is a patently ambiguous description. The Supreme Court's case law clearly points you to one conclusion. It is patently ambiguous. It cannot be fixed by parole evidence. Thank you. Dr. Hauslein may reply. Thank you. Just a few items to clarify from the accolades argument. In his argument, he points to an email from Tanner Rave. That email is also included as a part of his brief to this court. However, the email is incomplete. The email shows language from Tanner Rave to the defendant, Dr. Hauslein, but what it does not include is the foreword that came from Mr. Rave's administrative assistant that said, in essence, attached to the plat, it is lot 4, 1830 Kern Drive. In my opinion, this is a really significant omission. To leave the court to believe that all we provided to the defendant in this case was a picture showing three lots, when, in fact, that's not the case. On February 22nd, when Dr. Hauslein contacted Tanner Rave, he was provided with a plat that showed more than one lot, but along with that plat, he was provided with indication, it is lot 4, 1830 Kern Drive. If you look at that plat that was forwarded as a part of that email, you will note that lot 4 is a separately defined piece of that property, which is reflected on that plat. In addition, there is some suggestion that the PIN number has changed. However, in 2018, when this contract was entered into, as well as today, the PIN number that is listed in the contract was the PIN that described 1830 Kern Drive, lot 4, in Timber Creek subdivision. Timber Creek Estates subdivision, my apologies. What the defendant wants this court to believe is that the mutual mistake has no impact here. However, the mutual mistake has a very significant impact here. The mutual mistake is what creates this additional level of consideration with respect to the ambiguity in this contract. This would be a different case if both parties entered into a contract, neither of which appreciating that there was an inaccuracy. However, that's not the case here. We have one party who said, the defendant in this case, who is seeking to hold that this contract is not enforceable, says, I knew the legal description was inaccurate. I knew it. I signed it. Not a big deal. And in fairness, he doesn't say not a big deal, but in essence, that's the testimony. That's the impression we received. I knew it was inaccurate. I signed the contract. So then to later come back and say that the very fact that he knew, the fact that he knew the legal description was inaccurate is his get-out-of-jail-free card. After not advising the plaintiffs that he was aware of this inaccuracy, should it stop defendant from making this claim? The defendant knew what he was doing. He knew he was signing a contract where the legal description was inaccurate. He knew that when he signed the contract. He didn't advise the plaintiffs. He didn't say we need to revise this. He then later received evidence that could clarify the legal description within the contract. That clarification came with a PIN number, specifically identifying this property, which was consistent with a title commitment that was delivered to the defendant. Those are consistent. Did he receive the title commitment prior to communicating that he was not going to fulfill the contract? Your Honor, it's unclear. The timing is very close. The title commitment was provided to the defendant on March 7th of 2018. March 7th of 2018, the defendant testified that he advised the plaintiff  However, the timing of when the title commitment was received versus when the defendant advised he was not going to purchase the property has not been discerned thus far with respect to evidence that's been taken in this case. It is, however, clear that the letter that came from James Skinner, the attorney at the time, was on March 9th, certainly two days after the title commitment had been delivered. For the reasons that are set forth herein, we would say that the mutual mistake takes this out of the clear language related to Peyton and Ambiguity. There was an ambiguity. It can be resolved by extrinsic evidence. The PIN number and the title commitment allow us to do that. We have to be careful about the facts in this case. There are uncertainties. There are questions. Those are questions for the trial to reflect. Those are not questions that should have been resolved on a motion for summary judgment phase. Thank you. My client is not a realty company, no. My client is a developer and owns land, but they are not an agent, a real estate broker or agent. Thank you. Thank you, counsel, both, for your arguments in this matter this morning. It will be taken under advisement and a written disposition shall issue. The court will stand in brief recess.